IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE: ROSE RENTAL PROPERTIES, LLC                NO. 25-03091-JAW

**OBJECTION OF THE CITIZENS NATIONAL BANK OF MERIDIAN
TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

The Citizens National Bank of Meridian ("Bank") objects to the Debtor's Motion for Authority to Use Cash Collateral (Dkt 13) and in support states:

1. The Bank has filed a Motion to Prohibit Use of Cash Collateral (Dkt 9) setting forth the legal and factual basis for denying the Debtor's unauthorized use of the Bank's cash collateral. The Debtor's motion fails to satisfy the requirements of 11 U.S.C. § 363 and should be denied in its entirety.

2. Rose Rental Properties, LLC is indebted to the Bank under two Commercial Promissory Notes totaling $1,746,474.19 as of December 1, 2025, plus accruing interest and fees.

3. As collateral for the indebtedness, the Debtor pledged twenty (20) rental properties located in Hinds, Rankin, and Madison Counties to the Bank. The Bank holds duly recorded Deeds of Trust and Assignments of Rent on each property. Each Deed of Trust and Assignment of Rents contains an assignment of leases and rents provision. The Bank's security interest extends to all present and future leases, subleases, licenses, rents, income, royalties, and profits derived from the properties. The Debtor's rental income from these properties, and the proceeds thereof, constitute cash collateral within the meaning of 11 U.S.C. § 363(a).

4. The Bank has not consented and does not consent to the Debtor's use of any cash collateral in which it holds a security interest.

5. On information and belief, Community Bank of Mississippi also holds second and third position liens on certain of the Debtor's properties, securing indebtedness in excess of $233,000.00. The combined secured debt to the Bank and Community Bank totals approximately $1,979,474.19.

6. The Debtor bears the burden of proving by a preponderance of the evidence that the Bank's interest in cash collateral is adequately protected. 11 U.S.C. § 363(p)(1). "Adequate protection" requires that the creditor's interest in the collateral not be diminished during the period of use. 11 U.S.C. § 361.

1

7. The Debtor's motion and supporting exhibits fail to demonstrate adequate protection of the Bank's interests for the reasons set forth below.

8. The Debtor asserts in paragraph 5 of its motion that its real estate portfolio has an "estimated value of approximately $4,000,000" with "total secured debt approximat[ing] $2,000,000."

9. These valuations are conclusory and unsupported by any appraisal or competent evidence. The Debtor provides no detail regarding:

a. The methodology used to arrive at the $4,000,000 valuation;

b. Whether this is fair market value, liquidation value, or some other measure;

c. The condition of the properties;

d. Current market conditions for rental properties in the subject areas;

e. The impact of deferred maintenance;

f. Comparable sales data; or

g. Any professional appraisal.

10. The assertion that there is a "substantial equity cushion" is speculation and is insufficient to meet the Debtor's burden of proof.

11. The Debtor admits in paragraph 5 that it "had no cash on hand as of the petition date," demonstrating the precarious financial condition of the enterprise and the lack of any cash cushion.

12. The Debtor's Exhibit "A" purports to show historical income and projected cash flow, but the projections are fundamentally flawed.

13. Short-Term Rental ("STR") income is speculative and declining:

a. The STR properties show 2025 average monthly income, but the Debtor provides no context for seasonal variations, booking trends, or market conditions.

b. Two STR properties (47A Northtown and 128 N Brighton) are already operating at a net loss of ($26.97) and ($607.94) per month respectively, yet the Debtor proposes to continue operating these money-losing properties with the Bank's collateral.

c. The Debtor provides no explanation for why these properties are losing money or what steps will be taken to correct the situation.

d. The STR market is highly competitive and subject to rapid changes in demand, yet the budget assumes static income for six months.

14. Long-term rental projections are unrealistic:

a. The Debtor projects leasing up six (6) vacant properties over a six-month period, adding $3,826 in net monthly income by Month 6.

b. The Debtor provides no evidence of:

    i. Current marketing efforts;

    ii. Tenant demand in the relevant markets;

    iii. Condition of the properties;

    iv. Required repairs or improvements to make them rentable;

    v. Rental comparables supporting the projected rents; or

    vi. Any signed leases or letters of intent from prospective tenants.

c. The budget assumes a staggered lease-up schedule but provides no factual basis for the timing assumptions.

d. The Debtor has provided no evidence that it has successfully leased any of these properties since the petition date.

15. The budget omits critical expenses:

a. No provision for capital expenditures or major repairs;

b. No provision for tenant turnover costs (lost rent, repairs, re-leasing costs);

c. No provision for property tax increases or special assessments;

d. No provision for insurance premium increases;

e. No provision for bad debt or uncollectible rents;

f. No provision for legal and professional fees associated with this bankruptcy case;

g. No provision for U.S. Trustee quarterly fees;

h. No provision for debt service or adequate protection payments to secured creditors; and

i. No provision for contingencies despite the 10% variance allowance.

16. There is no provision for debt service and no ability to pay:

a. The budget contains no provision whatsoever for debt service payments to the Bank or Community Bank.

b. Even if the Debtor's optimistic projections are achieved, the maximum net cash flow of $14,414 per month by Month 6 is completely inadequate to service approximately $1,979,474.19 in secured debt.

c. The Debtor has made no proposal for adequate protection payments to either secured creditor.

d. At current interest rates, monthly interest alone on the Bank's debt of $1,746,474.19 would exceed $8,500 per month, consuming nearly 60% of the Debtor's projected best-case cash flow.

e. There is no provision for any principal reduction whatsoever.

f. The Debtor's entire cash flow generation is insufficient to pay current operating expenses, cure tax delinquencies, maintain insurance, AND service the secured debt.

g. This is not a reorganization—it is a liquidation disguised as an attempt to operate, using the secured creditors' collateral to fund operations that cannot support the debt structure.

h. Without any ability to service debt, the Debtor cannot propose or confirm any feasible plan of reorganization.

17. The budget also contains no provision for delinquent taxes or insurance:

a. As of the petition date, ad valorem taxes on the Bank's twenty (20) properties are past due in the amount of approximately $77,000.00.

b. The Debtor has a demonstrated history of failing to pay property taxes on time, as evidenced by the Bank's previous payment of $39,664.15 in delinquent taxes to protect its collateral.

c. The budget contains no line item and no plan for curing these substantial tax delinquencies.

d. Property taxes continue to accrue during the bankruptcy case, yet the budget makes no provision for current or past due taxes.

e. Unpaid property taxes create senior liens that prime the Bank's security interests and threaten the Bank's collateral position.

f. Many of the Bank's collateral properties are currently uninsured or the Debtor has failed to provide proof of insurance despite repeated requests from the Bank.

g. The Debtor's failure to maintain insurance violates the express covenants of the Loan Documents.

h. Operating rental properties without insurance exposes the Bank's collateral to catastrophic loss from fire, storm damage, liability claims, and other insurable risks.

i. The budget allocates insurance expenses based on historical costs but provides no evidence that current insurance is actually in place or that quoted premiums are accurate.

j. The Debtor has repeatedly failed to provide the Bank with proof of insurance in the form of declarations pages showing coverage amounts and the Bank as loss payee.

18. The proposed "Replacement liens" on rents provide no actual protection since they are already pledged to the Bank and the rents are being consumed by operating expenses that exceed income. Replacement liens do not prevent diminution in the value of the underlying real property collateral due to deferred maintenance, wear and tear, tenant damage, or market deterioration. The proposed replacement liens are junior to administrative expenses and other priority claims that will arise during the bankruptcy case.

19. The insurance and property maintenance obligations are pre-existing obligations under the loan documents and provide no "new" or "additional" protection. The Debtor has not demonstrated it has the financial capacity to maintain insurance and property condition while operating at or near break-even cash flow. The budget provides minimal maintenance allocations ($68.18/month per property) which is grossly insufficient for properties of this age and condition.

20. Providing monthly financial reports does not prevent diminution in value; it merely allows the Bank to observe the deterioration. The Debtor has not proposed any remedial action or "trigger" events that would afford the Bank additional protection if projections are not met.

21. Even accepting the Debtor's projections at face value, the business generates only $10,588 per month initially, increasing to $14,414 by Month 6 if all vacant units are successfully leased. This level of cash flow is insufficient to:

a. Fund a meaningful plan of reorganization;

b. Make any payment toward the combined $1,979,474.19 debt owed to the Bank and Community Bank;

c. Pay administrative expenses of the bankruptcy estate;

d. Provide any cushion for unexpected expenses or revenue shortfalls;

e. Service the secured debt—monthly interest alone at current rates would consume over 60% of projected cash flow; or

f. Demonstrate the Debtor is operating a viable business rather than merely delaying inevitable liquidation.

22. The Debtor's own projections demonstrate that even in a best-case scenario where all vacant units are leased at projected rents, this is a failing business that cannot generate sufficient cash flow to reorganize. The fundamental problem is not merely operational—it is structural. The debt load exceeds the income-generating capacity of the assets by such a magnitude that no amount of operational improvement can bridge the gap.

23. Without any ability to service the secured debt or propose adequate protection payments, this case has no reasonable prospect of successful reorganization and merely delays the inevitable while eroding the value of the secured creditors' collateral.

24. Requiring the Bank to finance the Debtor's operations through use of cash collateral, when the Debtor has demonstrated inability to operate profitably, meet its obligations, maintain insurance, pay property taxes, or service nearly $2,000,000 in secured debt, imposes an unfair and unconscionable burden on secured creditors.

WHEREFORE, PREMISES CONSIDERED, the Citizens National Bank of Meridian requests that this Court:

A. Deny the Debtor's Motion for Authority to Use Cash Collateral in its entirety;

B. Grant the Bank's Motion to Prohibit Use of Cash Collateral (Dkt. #9);

C. Order the Debtor to immediately account for all post-petition cash collateral collected and used;

D. Order the Debtor to turn over all post-petition cash collateral to the Bank or to a segregated account;

E. Prohibit the Debtor from any further use of cash collateral unless and until proper authorization is obtained;

F. Order the Debtor to immediately provide proof of comprehensive insurance on all twenty properties with the Bank named as loss payee, or in the alternative, authorize the Bank to obtain force-placed insurance at the Debtor's expense;

G. Order the Debtor to immediately pay all past due property taxes totaling approximately $77,000.00, or in the alternative, require the Debtor to establish a plan for curing said tax delinquencies within a reasonable time;

H. In the alternative, if the Court is inclined to grant any interim relief, condition such relief upon:

      1. Immediate provision of proof of insurance on all properties;

      2. Immediate payment of all past due taxes or establishment of tax escrow;

      3. Strict limitations on use (essential expenses only);

      4. Short duration (no more than 14 days);

      5. Adequate protection payments to the Bank;

      6. Weekly detailed reporting;

      7. Additional security; and

      8. Such other conditions as the Court deems appropriate;

I. Award the Bank its attorneys' fees and costs incurred in connection with this matter pursuant to the loan documents and 11 U.S.C. § 506(b);

J. Set a prompt final hearing on the use of cash collateral; and

K. Grant such other and further relief as may be just and proper.

DATED: December 10, 2025

                             **THE CITIZENS NATIONAL**
                             **BANK OF MERIDIAN**

                        By: /s/ Jeff Rawlings
                           Its Attorney

### CERTIFICATE OF SERVICE

I served a copy of the foregoing on December 10, 2025 via the ECF notification service upon Thomas Carl Rollins, Jr. and the Office of the U.S. Trustee.

                             /s/ Jeff Rawlings
                             Jeff Rawlings

Jeff Rawlings
Rawlings & MacInnis, P.A.
P.O. Box 1789
Madison, MS 39130-1789
601-898-1180
jeff@rawlingsmacinnis.net
MSB # 4642