

**EXCLUSIVE AUTHORIZATION AND RIGHT TO SELL LISTING AGREEMENT**
**(SEPARATE BUYER BROKER COMPENSATION)**

> This form is provided as a courtesy to the parties only. It is not required to be used in this transaction and may not fit the needs, goals and purposes of the parties. The Mississippi Association of REALTORS® makes no statement or warranty as to this form, its content or use, and the parties, by their use of this form, acknowledge said facts and agree that neither the Mississippi Association of REALTORS® nor any member thereof shall be liable to any party or person for its contents or use. If any party to this transaction does not fully understand it, or has any questions, the party should seek advice from a competent legal professional before signing.

1. Are you currently a party to a referral agreement with a relocation company or another real estate broker?  ☐ YES  ☑ NO

2. **1. EXCLUSIVE RIGHT TO SELL.** I, the undersigned Seller(s), hereinafter called "Seller(s)", hereby employ and grant
3. __Southern Homes Real Estate_____ , hereinafter called "Listing Brokerage", the exclusive and irrevocable
4. right commencing on __12/13/2025_____ , and expiring at midnight Central Standard Time on
5. __06/12/2026_____ (the "Term"), to sell or exchange the real property described as:
6. LOT 1 PLANTERS POINT
7. _____
8. _801 Planters Point Drive_____ , _Canton_____ , _39046_____ in _Madison_____ County, MS.
9. (street address)                     (city)              (zip code)        (county)
10. The Property is further described as tax parcel # _083D-19C-002/60.02_____ , _____ , _____
11. in the public records of the county within which the property is located.
12. The foregoing notwithstanding, should the Property be under a pending contract at the expiration date above, the Term shall
13. be automatically extended and remain effective until Closing or termination of such contract, whichever occurs first.

14. **Marketing of Property Commencement Date.** Seller(s) direct Listing Brokerage to market the Property to the general public
15. on the commencement date of this Agreement OR (if completed) on the __15__ day of __december__ , __2025__ .
16. NOTE: Listing Brokerage is required to submit the listing to the MLS for cooperation with other MLS participants within one
17. (1) business day of marketing the Property to the public.

18. **2. LIST PRICE.** The list price shall be $_____ and on the following terms _____
19. _____ or other price and terms that are acceptable to me.

20. **3. COMPENSATION.**
21. (a) **Listing Brokerage Compensation [CHOOSE ALL THAT APPLY]:**
22. ☑ __2.5__ % of the gross sales price*
23. ☐ flat fee of $_____ *
24. ☐ non-refundable flat fee of $_____ upon listing
25. ☐ non-refundable flat fee of $_____ if the Property is sold, transferred, conveyed, leased, rented or
26. made unmarketable by Seller(s) without the writen consent of Listing Brokerage
27. ☐ flat fee of $_____ if the listing is canceled during the term during the term of the listing or any
28. extension, subject to Listing Brokerage's agreement
29. ☐ variable rate as follows: _____
30. _____
31. ☐ Other: _____
32. _____

33. (b) **Buyer Brokerage Compensation. [CHOOSE ONE]:**
34. ☐ Seller chooses not to offer Compensation to Buyer Brokerage.
35. ☐ Seller chooses to offer Compensation as follows to brokerage that effects execution of a binding contract with a buyer
36. ready, willing and able to purchase Property ("Buyer Brokerage") (may be published in Listing Brokerage's consumer-facing
37. websites or in any disclosure/medium/service unrelated to **[CHOOSE ALL THAT APPLY]**:
38. ☐ _____ % of the gross sales price*
39. ☐ flat fee of $_____ *
40. ☐ Other: _____
41. _____

**Page 1 of 6**

**Copyright ©2024 by Mississippi Association of REALTORS®**  Rev. Date 10/2024
**F4B – Exclusive Authorization and Right to Sell Listing Agreement (SEPARATE BUYER BROKER COMPENSATION)**

42. **[CHECK IF APPLICABLE]:**
43. ☑ Buyer Brokerage Compensation shall be paid to Listing Brokerage when Listing Brokerage is acting as a Disclosed Dual
44. Agent, subject to any variable rate agreement and any Buyer agreement.
45. ☑ Buyer Brokerage Compensation shall be paid to Listing Brokerage as additional Listing Brokerage Compensation when
46. Buyer(s) is/are not represented by a broker (Customer) and Listing Brokerage is not working with the Buyer(s) and acting
47. solely on behalf of Seller(s).

48. Compensation payable pursuant to Sections (a) and (b) above represent Total Broker Compensation payable by Seller(s)
49. in this transaction. Seller(s) may agree to pay additional amounts by separate agreement.

50. *Payable if (a) Property is sold or is pending or in contingent status at the expiration of the Term hereof; or (b) if
51. Property is sold, conveyed, or otherwise transferred within     90     calendar days after the termination of this
52. Agreement or any extension thereof (Protection Period) to anyone to whom this Property was shown during the Term,
53. provided Seller(s) has/have received notice in writing, including the names of the prospective purchasers, before or upon
54. termination of this Agreement or any extension thereof. Seller(s) shall be obligated to pay such Compensation if, in the
55. event of breach by Buyer(s), Seller(s) successfully secure(s) specific performance by Buyer(s) on any contract entered into
56. which would otherwise require payment of Compensation under this Agreement.*

57. (c) **Disclosures relating to Broker Compensation:**
58. (1) **The amount of real estate compensation is not fixed by law and is fully negotiable; offers of compensation, if made,**
59. **are not blanket, unconditional or unilateral.** By signing this Agreement Seller(s) and Listing Brokerage acknowledge that
60. they have negotiated in good faith as to all Compensation in this Agreement.
61. (2) Offers of compensation may not be made through the MLS, but may be made outside MLS.
62. (3) Seller(s) acknowledge(s) that a Buyer may have entered into a Buyer Agreement with a Buyer's Brokerage that has been
63. negotiated separately from this Agreement. Any Buyer's Brokerage Compensation offered by Seller(s) in 3(b) may be
64. different from Buyer Broker Compensation in any Buyer Agreement. Seller(s) may be asked by a Buyer to pay a portion of
65. the Buyer's Brokerage compensation in addition to Compensation authorized above.
66. (4) Any Compensation authorized by Seller(s) may be offered to subagents, buyer/tenant agents and/or brokers acting in
67. legally-recognized non-agency capacities, subject to applicable law.
68. (5) Buyer agents or brokers, even if compensated by Listing Broker or Seller(s), may represent the interests of buyers.

69. **4. MULTIPLE LISTING SERVICE (MLS).** If the Property is publicly marketed, MLS rules require that Listing Brokerage
70. file this listing with the Multiple Listing Service (MLS) within one (1) business day. Public marketing includes, but is not
71. limited to, fliers displayed in the windows, yard signs, digital marketing on public-facing websites, brokerage website displays
72. (including IDX and VOW), digital communications marketing (email blasts), multi-brokerage listing sharing networks, and
73. other applications available to the general public. [**Choose One**]:
74. ☑ Listing Brokerage is a Participant of the MLS United_____ MLS
75. and listing information shall be provided to the MLS to be published and disseminated to its authorized members, MLS
76. Participants and Subscribers, and updated as appropriate. The Listing Brokerage is also authorized to report the sale, when it
77. occurs including, but not necessarily limited to, price, terms and financing.
78. OR
79. ☐ Property will not be listed in MLS and will not be marketed publicly. Should the Property be publicly marketed by anyone,
80. including Seller(s), Seller(s) acknowledge(s) and agree(s) that MLS rules require that Listing Brokerage file this listing with
81. the MLS within one (1) business day.

82. **5. AUTHORIZATIONS.**
83. I authorize Listing Brokerage to advertise my property on the Internet — ☑ YES ☐ NO
84. I authorize Listing Brokerage to place lockbox on Property. Location front door — ☑ YES ☐ NO
85. I authorize Listing Brokerage to post a copy of the Property Condition Disclosure Statement in MLS — ☑ YES ☐ NO
86. I authorize Listing Brokerage to place a For Sale/Sold sign on my property — ☑ YES ☐ NO
87. Seller(s) authorize(s) Listing Brokerage to publish that Seller(s) is/are willing to consider offering
88. concessions/allowances to Buyer(s) at closing — ☐ YES ☑ NO
89. I authorize Listing Brokerage to act as a Disclosed Dual Agent (see section 10). — ☑ YES ☐ NO

Copyright ©2024 by Mississippi Association of REALTORS®  Rev. Date 10/2024
F4B – Exclusive Authorization and Right to Sell Listing Agreement (SEPARATE BUYER BROKER COMPENSATION)

90. **6. IMPROVEMENTS.** All improvements and appurtenances are included in the Purchase Price including, if now in or on the
91. Property, the following: all built-in appliances, installed smart home systems and peripheral devices, ceiling fans, all plumbing
92. and heating and air conditioning equipment including any window units, stationary laundry tubs, water heaters, doors,
93. windows, storm doors and windows, window treatments (e.g., shutters, blinds, shades) and associated hardware, awnings,
94. carpet, bathroom fixtures and mirrors, lighting fixtures and their shades, gas logs, fireplace doors and screens, security system
95. components, smoke detectors, garage door openers, antennae and satellite dishes (including rotor equipment but excluding
96. proprietary components), central vacuum systems/attachments, landscaping, fences, permanently installed pet fences and
97. equipment (including collars), gates, outdoor lighting, swimming pools and equipment, mailboxes, water pump(s) and
98. pressure tanks, permanently installed playground equipment, and permanently installed cooking grills, and keys to all doors
99. or on any list attached to this Agreement. Kitchen Refrigerator ☐ will ☑ will not remain with Property.
100. n/a
101. List any leased equipment
102. Is there a security system under contract that must be fulfilled? ☐ YES ☑ NO

103. **7. HOMEOWNER OR CONDOMINIUM ASSESSMENTS.** The Property ☐ is ☑ is not part of a Homeowners' or
104. Condominium Association. If the Property is part of an association, the contact for such association is:

105. Association Name: N/A                                                                Phone Number: _____
106. Management Company/Contact Name: n/a                                      Phone Number: _____
107. Assessment Amount $ N/A_____ Payable: ☐ annually ☐ semi-annually ☐ quarterly ☐ monthly

108. **8. LEAD-BASED PAINT.** If the dwelling was built before 1978, a lead-based paint inspection may be required and the presence
109. of known lead-based paint must be disclosed.

110. **9. HOMESTEAD EXEMPTION.** Homestead exemption ☐ is or ☑ is not in effect for the current year as represented by the
111. Property Condition Disclosure Statement.

112. **10. SELLER'S ACKNOWLEDGEMENT.**
113. (a) Seller(s) hereby certify(ies) that all information provided herein is complete, true and accurate to the best of their
114. knowledge and belief. **Seller(s) agree(s) to defend, indemnify and hold harmless the Listing Brokerage and their**
115. **salespersons against and from any losses, damages, claims, suits at law (including court costs and attorney fees) or other**
116. **costs or expenses relating to or resulting from any actual or alleged inaccuracy or incompleteness of the property**
117. **information contained herein or any other information provided by Seller(s) including, but not limited to, any Property**
118. **Condition Disclosure Statement.**

119. (b) By signing below, Seller(s) acknowledge(s) that the **Working With A Real Estate Broker** disclosure form, which is
120. required by the Mississippi Real Estate Commission, has been fully explained to them and they acknowledge a signed copy is
121. attached to this Agreement.

122. (c) Seller(s) acknowledge(s) that they have good, marketable and sellable title to the Property and all improvements offered for
123. sale therewith and full and complete authority to execute this Agreement. Seller(s) agree(s) to convey merchantable and
124. insurable title, subject only to the following items recorded in the Chancery Clerk's Office(s) wherein Property is located:
125. easements without encroachments, applicable zoning ordinances, protective covenants and prior mineral reservations
126. ("Permitted Exceptions"). Seller(s) further agree(s) to prorate taxes, leases and/or association fees for the year of conveyance
127. through the date of conveyance; and to pay off or satisfy and resolve all special assessments or other encumbrances other than
128. Permitted Exceptions prior to the date of conveyance unless specifically agreed otherwise in writing with any Buyer(s).

129. (d) Seller(s) further agree(s) to permit Listing Brokerage to reassign Seller(s) to another agent within the firm for representation
130. should Seller(s) and Listing Brokerage agree that reassignment is best.

131. (e) Seller(s) acknowledge that it is possible that Listing Brokerage may represent both Seller(s) and Buyer(s) in the same
132. transaction upon proper disclosure and written consent of both Seller(s) and Buyer(s). This is called "Disclosed Dual Agency."
133. In such instances, Listing Brokerage would have two (2) clients in the same transaction, and as a result Listing Brokerage may
134. have limitations on Listing Brokerage's ability to represent either party fully and exclusively.

REALTOR® **Copyright ©2024 by Mississippi Association of REALTORS®** Rev. Date 10/2024
**F4B – Exclusive Authorization and Right to Sell Listing Agreement (SEPARATE BUYER BROKER COMPENSATION)**

| | |
|---|---|
| 135. | (f) Seller(s) acknowledge(s) that any Buyer(s) under contract retain(s) the right to perform inspections (with at least |
| 136. | twenty-four hours' notice) and a final walk-through inspection of the Property prior to Closing to verify the terms of the |
| 137. | Contract have been fulfilled, to confirm that any Seller repairs or Seller's(s') removal of personal property has not damaged |
| 138. | the Property, and to confirm that the Property is free of Seller's(s') personal property. Seller(s) agree(s) to provide unlimited |
| 139. | access to the Property and shall see that all utilities are on for final walk-through inspection and continuing through the time of |
| 140. | Closing, except as otherwise agreed in writing. |
| | |
| 141. | (g) Seller(s) further acknowledge(s) that Listing Brokerage shall not be obligated to continue to market Property after an offer |
| 142. | has been accepted by Seller(s). |
| | |
| 143. | (h) Seller(s) agree(s) to cooperate with Listing Brokerage and its agents in selling the Property and authorizes Listing |
| 144. | Brokerage, its agents and/or agents with customers or clients to enter Property for purposes of showing/reviewing Property at |
| 145. | reasonable times; to promptly tell Listing Brokerage about all inquiries received concerning the Property; provide |
| 146. | Homeowners Association documentation, if applicable; and remain responsible for safekeeping, safeguarding, securing and/or |
| 147. | concealing any valuable personal property during showings or open houses. |
| | |
| 148. | **11. LISTING BROKERAGE ACKNOWLEDGEMENT.** |
| 149. | (a) Listing Brokerage and its agent(s) agree: |
| 150. | (1) to exercise all duties to Seller(s) as set forth in the **Working With A Real Estate Broker** disclosure including the |
| 151. | fiduciary duties of confidentiality, obedience, disclosure, full accounting and the duty to use skill, care and diligence; |
| 152. | (2) to exercise the duty of honesty and fair dealing to all parties; |
| 153. | (3) to exercise the duty to disclose all facts known to Listing Brokerage materially affecting the value of the property, |
| 154. | which are not known to, or readily observable by, the parties in a transaction; |
| 155. | (4) to protect and promote the interests of their Client. |
| | |
| 156. | (b) When an offer is made on the Property, Listing Brokerage shall document and date Seller's(s') personal acceptance or |
| 157. | rejection of the offer and, upon written request, shall provide a copy of such document to the person making the offer. Upon |
| 158. | written request by a cooperating REALTOR® broker, Listing Brokerage shall provide, as soon as practical, a written |
| 159. | affirmation to the cooperating broker stating that the offer has been submitted to the Seller(s), or a written notification that the |
| 160. | Seller(s) has/have waived the obligation to have the offer presented. |
| | |
| 161. | **12. EQUAL HOUSING OPPORTUNITY.** This property is offered in compliance with applicable anti-discrimination laws. THE |
| 162. | PARTIES UNDERSTAND AND ACKNOWLEDGE THAT IT IS ILLEGAL TO DISCRIMINATE AGAINST ANY |
| 163. | PROSPECTIVE BUYER ON THE BASIS OF RACE, COLOR, NATIONAL ORIGIN, RELIGION, SEX (INCLUDING |
| 164. | GENDER IDENTITY AND SEXUAL ORIENTATION), FAMILIAL STATUS OR DISABILITY. |
| | |
| 165. | **13. AUDIO & VIDEO; PHOTOGRAPHY.** Owners, Sellers, Invitees and Buyers of real property using audio and/or video |
| 166. | surveillance devices capable of photography, videography or videotelephony are solely responsible for compliance with |
| 167. | applicable state, local and federal laws concerning use of such devices including, but not limited to, cameras, phones, security |
| 168. | systems, monitors or other devices capable of making or transmitting audio and/or video recordings and/or photographs. |
| 169. | Audio or video recordings or photographs may be illegal under state, local and/or federal laws, depending on the |
| 170. | circumstances. Sellers of real property acknowledge that prospective purchasers or their agents, representatives, appraisers, |
| 171. | inspectors, contractors or others may photograph or make video recordings of the interior and exterior of Seller's property in |
| 172. | the context of a showing, inspection, open house or examination of the property. Sellers should remove or secure any items of |
| 173. | a personal nature that Seller does not want photographed, recorded or transmitted, such as family photographs, valuables, |
| 174. | paperwork and any items containing personally identifiable information. Sellers and Buyers are urged to consult legal counsel |
| 175. | concerning applicable laws and take steps to protect against practices violative of rights of persons owning, inhabiting, |
| 176. | utilizing, viewing or visiting the property. **By signing this contract, you acknowledge receipt of this notice and agree to** |
| 177. | **hold the brokerages and their agents harmless from all claims (excepting only claims under the exclusive jurisdiction of** |
| 178. | **the Mississippi Real Estate Commission under license law or claims under the National Association of REALTORS®** |
| 179. | **Code of Ethics and Arbitration Manual) or damages arising out of use of video and audio surveillance systems or** |
| 180. | **photography, videography or videotelephony.** |



**Copyright ©2024 by Mississippi Association of REALTORS®** Rev. Date 10/2024
**F4B – Exclusive Authorization and Right to Sell Listing Agreement (SEPARATE BUYER BROKER COMPENSATION)**

181.  **14. MULTIPLE OFFERS.** In the event that more than one offer is made before Seller(s) has/have accepted an offer, any other
182.  written offer received by Listing Brokerage, whether from a prospective purchaser or from another licensee cooperating in a
183.  sale, shall be presented to Seller(s) unless Listing Brokerage has specific, written instructions from Seller(s) to postpone the
184.  presentation of other offers. Listing Brokerage cautions Seller(s) against countering on more than one offer at the same time.
185.  In the event any subsequent offers are presented to Seller(s), after acceptance of a prior offer, Listing Brokerage recommends
186.  that Seller(s) obtain the advice of legal counsel prior to acceptance of a subsequent offer except where the acceptance is
187.  contingent on the termination of the pre-existing purchase contract. Should multiple offers be received, Listing Brokerage will
188.  inform Seller(s) of their options and receive further instructions. Listing Brokerage must respond to written requests from
189.  cooperating brokers submitting offers that such offer has been submitted to Seller(s) or that Seller(s) has/have waived the
190.  obligation to receive such offer.

191.  **15. PREMISES SAFETY & LIABILITY; WAIVER.** Seller(s) acknowledge(s) that Seller(s), and not Listing Brokerage or any
192.  of Listing Brokerage's agents, are solely responsible for the Property and safety of the Property during the Term hereof, and
193.  during any Protection Period. Seller(s) covenant(s) to make reasonable efforts to maintain a safe environment for visitors to the
194.  Property during the Term hereof. **For and in consideration of the entry of Listing Brokerage into this Agreement and**
195.  **performance of the services hereunder, and excluding only claims pertaining to the gross negligence of Listing Brokerage**
196.  **or its agents, Seller(s) and their successors, relatives, assigns, employees, employers, executors, administrators,**
197.  **beneficiaries, insurers, reinsurers, subrogees, officers, directors, stockholders, associates, sister companies, affiliated**
198.  **corporations, attorneys, representatives and all other related entities and individuals in privity therewith agree to**
199.  **defend, indemnify and hold harmless Listing Brokerage and their agents against and from any losses, damages,**
200.  **claims, suits at law (including court costs and attorney fees) or other costs or expenses relating to or resulting from**
201.  **any actual or alleged injury, harm, loss, damages or claim of any nature asserted by any person whatsoever having**
202.  **to do with or arising out of any injury to any person or property entering or upon Seller's(s') Property during the**
203.  **Term hereof, including any Protection Period.** This comprehensive release includes, but is not limited to, damage due to
204.  vandalism, theft, freezing pipes, open houses or showings of the Property. Nothing herein releases or excuses any duties of
205.  Listing Brokerage or its agents under the Mississippi Real Estate Broker License Act of 1954 or corresponding regulations.

206.  **16. ATTORNEY'S FEES.** In any legal action, proceeding or arbitration arising out of this Agreement, the prevailing party shall
207.  be entitled to reasonable attorney's fees and costs from the non-prevailing party.

208.  **17. ENTIRE AGREEMENT.** There are no other agreements or conditions except as set forth herein and on the MLS profile
209.  sheet attached, if any. No verbal statements, representations, promises or inducements shall have any validity or effect nor
210.  shall be a part of this Agreement. Any amendments, changes, additions or deletions to this Agreement must be in writing
211.  signed by all parties. Seller(s) should seek professional, legal and/or tax advice.

212.  **18. NOTICE.** Any notices required or permitted to be given under this Agreement shall be delivered by hand or mailed by
213.  certified registered mail, return receipt requested, in a postage prepaid envelope; by nationally recognized overnight carrier
214.  service; or by email (if the email address is listed below), at sender's option, and addressed to Seller or Listing Brokerage (as
215.  agent for Seller) as follows:
216.  **Seller(s) Address:** _____
217.  **Seller(s) Email:** _____
218.  **Listing Brokerage Address:** 115 Laurel Park Cv, Suite 210, Flowood, MS 39232
219.  **Listing Brokerage Email:** office@southernhomesms.com

220.  **19. HEADINGS; SINGULAR AND PLURAL SAME:** Headings are inserted for the convenience of the Parties only and are not
221.  to be considered when interpreting this document. Words in the singular mean and include the plural and vice versa. Words in
222.  the masculine gender include the feminine gender and vice versa. Words in the neutral gender include the masculine gender
223.  and the feminine gender and vice versa.

224.  **20. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA").** 26 U.S. Code Section 1445 of the Internal
225.  Revenue Code provides that a transferee ("Buyer(s)") of a United States real property interest must be notified in writing and
226.  must withhold tax if the transferor ("Seller(s)") is a foreign person and no exceptions from FIRPTA apply. Buyer(s) and
227.  Seller(s) agree to comply with FIRPTA requirements under Section 1445 of the Internal Revenue Code. Seller(s) shall
228.  represent and warrant, under penalties of perjury, whether Seller(s) are a "foreign person" (as the same is defined within
229.  FIRPTA) prior to Closing. Any representations made by Seller(s) with respect to this issue shall survive Closing and delivery
230.  of the deed. Buyer(s) and Seller(s) shall complete, execute and deliver, on or before Closing, any instrument, affidavit,
231.  or statement reasonably necessary to comply with the FIRPTA requirements, including delivery of their respective federal
232.  taxpayer identification numbers or Social Security numbers.


**Copyright ©2024 by Mississippi Association of REALTORS®**  Rev. Date 10/2024
**F4B – Exclusive Authorization and Right to Sell Listing Agreement (SEPARATE BUYER BROKER COMPENSATION)**

233. Due to the complexity and potential risks of failing to comply with FIRPTA, including the Buyer's(s') responsibility for
234. withholding the applicable tax, Buyer(s) and Seller(s) should seek legal and tax advice regarding FIRPTA compliance, as the
235. respective Broker(s)/Agent(s) representing or assisting either party will be unable to assure either party whether the transaction
236. is exempt from FIRPTA withholding requirements.
237. Seller **[CHOOSE ONE]** ☐ is ☑ is not a foreign person for purposes of FIRPTA.

238. **21. OTHER PROVISIONS:** _____
239. _____
240. _____
241. _____
242. _____
243. _____

244. **22. CANCELLATION.** This Exclusive Right to Sell Listing Agreement may be cancelled only upon mutual written consent of
245. the parties. The foregoing notwithstanding, Listing Brokerage may cancel this Agreement if the Property is sold, transferred,
246. conveyed, leased, rented or made unmarketable by Seller(s) without the written consent of Listing Brokerage, reserving all
247. rights as to any claim for damages relating thereto.

248. Signed this the _____ day of _____, _____, and a copy hereof received.
249. SELLER _____ SELLER _____
250. Print name: Jerrick Rose    Print name:

251. BROKER FIRM NAME: Southern Homes Real Estate
252. *Victoria Prowant*    dotloop verified 12/15/25 2:12 PM CST  YXTI-OQCK-HYHW-QFGV
253. Broker or Broker's Affiliated Salesperson
254. Print Name: Victoria Prowant

**Page 6 of 6**

Copyright ©2024 by Mississippi Association of REALTORS®    Rev. Date 10/2024
F4B – Exclusive Authorization and Right to Sell Listing Agreement (SEPARATE BUYER BROKER COMPENSATION)