# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:    Rose Rental Properties, LLC, Debtor         Case No. 25-03091-KMS
                                                     CHAPTER 11

## MOTION TO APPROVE THE SALE OF CERTAIN REAL PROPERTY

COMES NOW, Debtor, by and through counsel, and moves this Court to approve the sale of certain real property, and in support thereof, would show the Court as follows:

1. Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code.
2. That Debtor has put up for sale for Certain Real Property located at 118 Fairfax Circle #B, Brandon, MS. This includes the house and land that is mortgaged by Citizens National Bank. A copy of the full legal description is atatched as Exhibit "A".
3. That Victoria Prowant has been approved by the Court as a Realtor to list the debtor's properties.
4. That Debtor wishes to sell the property for $149,900.00. That the loan with Citizens National Bank should be paid from the proceeds after all closing costs and provisions have been paid.
5. That the Debtor shall pay the following closing costs and provisions:
   a. Commission to Buyers agent in the amount of 2.5% of Gross Sales Price
   b. Commission to Sellers agent in the amount of 2.5% of Gross Sales Price
6. That the expected closing date is March 27, 2026.
7. That a copy of the contract is atached as Exhibit "B".

WHEREFORE, Debtor prays that this motion be approved and for such additional or alternative relief as may be just and proper.

Respectfully submitted

/s/ Thomas C. Rollins, Jr.
Thomas C. Rollins, Jr. (MSBN 103469)
Jennifer A Curry Calvillo (MSBN 104367)
The Rollins Law Firm, PLLC
P.O. Box 13767
Jackson, MS 39236
601-500-5533

Book 2019 Page 9495
DEED 5/7/2019 10:12:02 AM

RANKIN COUNTY, MS LARRY SWALES, CHANCERY CLERK
I CERTIFY THIS INSTRUMENT WAS FILED ON 5/7/2019 10:12:02 AM AND RECORDED IN DEED 2019 Pages 9493 - 9495

Exhibit "A"
Legal Description
Parcel H11P-10-1881 – Rankin County, Mississippi

The North part of Lot 188 Northwoods Subdivision, Part 4, a subdivision according to a map or plat thereof which is on file and of record in the office of the Chancery Clerk of Rankin County at Brandon, Mississippi in Plat Cabinet B, Slot 74, reference to which is hereby made in aid of an part of this description, and which is more particularly described by metes and bounds as follows:

Begin at the Northeast corner of Lot 188, Northwoods subdivision, Part 4, as recorded in the office of the Chancery Clerk of Rankin County, Mississippi in Plat Cabinet B, Slot 74; run thence Westerly along the North line of Lot 188 a distance of 105.50 feet; turn thence through an interior angle to the right of 90 degrees 00 minutes and run Southerly a distance of 57.00 feet, turn thence through an interior angle to the right of 74 degrees 00 minutes and run Northwesterly a distance of 21,77 feet; turn thence through an interior angle to the right of 196 degrees 00 minutes and run Easterly a distance of 84.58 feet to a point on the West right of way of Fairfax Circle; turn thence through an interior angle to the right of 90 degrees 00 minutes and run Northerly along the West right of way of Fairfax Circle a distance of 50.50 feet to the Point of Beginning.



# CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE

> This form is provided as a courtesy to the parties only. It is not required to be used in this transaction and may not fit the needs, goals and purposes of the parties. The Mississippi Association of REALTORS® makes no statement or warranty as to this form, its contents or use, and the parties, by their use of this form, acknowledge said facts and agree that neither the Mississippi Association of REALTORS® nor any member thereof shall be liable to any party or person for its contents or use. If any party to this transaction does not fully understand it, or has any questions, the party should seek advice from a competent legal professional before signing.

1.  **1. PARTIES.** Buyer _____ **Marcus Stephenson** _____
2.  Seller _____ **Owner of record** _____
3.  Buyer agrees to buy and Seller agrees to sell the herein described property on the terms and conditions set forth herein.
4.  **2. PROPERTY.** Description: _____
5.  _____
6.  ____**118 Fairfax Circle  # B**____ , ____**Brandon**____ , _____ in ____**Madison**____ County, MS.
7.  (street address, if available)  (city)  (zip code)  (county)
8.  The Property is further described as tax parcel(s)/PPIN #   __**H11P000010 0881**__ , _____ , _____
9.  together with any of the following presently located therein, at no additional value: all built-in appliances, installed smart home
10. systems and peripheral devices, ceiling fans, all plumbing and heating and air conditioning equipment including any window units,
11. stationary laundry tubs, water heaters, doors, windows, storm doors and windows, window treatments (e.g., shutters, blinds, shades)
12. and associated hardware, awnings, carpet, bathroom fixtures and mirrors, lighting fixtures and their shades, gas logs, fireplace doors
13. and screens, security system components, smoke detectors, garage door openers, antennae and satellite dishes (including rotor
14. equipment but excluding proprietary components), central vacuum systems/attachments, landscaping, fences, permanently installed
15. pet fences and equipment (including collars), gates, outdoor lighting, swimming pools and equipment, mailboxes, water pump(s) and
16. pressure tanks, permanently installed playground equipment, and permanently installed cooking grills, keys to all doors with keyed
17. locks or deadbolts, and all other personal property items permanently attached in any manner unless specifically excluded herein.
18. Kitchen  Refrigerator [X] will  [ ] will not remain with Property, at no additional value.
19. **3. PURCHASE PRICE.** Buyer agrees to pay a purchase price of $__**149,900.00**__ ("Purchase Price")
20. by Federal Reserve wire transfer, Cashier's Check issued by a financial institution as defined in 12 CFR § 229.2(i), or such form as
21. is approved in writing by Seller.
22. **4. EARNEST MONEY.  (SELECT ONE):**
23. [ ] Buyer has tendered the sum of $ _____ as Earnest Money to [CHECK ONE] [ ] Listing Broker [ ] Buyer's
24. Broker who shall be fully responsible for said Earnest Money at all times. Responsible Broker shall hold Earnest Money until a
25. binding Contract is entered into OR until such time as negotiations fail to result in a binding Contract, in which case the Earnest
26. Money shall be promptly returned to Buyer. Upon entry of the parties into a binding Contract, said Broker shall deposit the Earnest
27. Money into a federally insured trust account by the close of business of the next banking day following the Effective Date of the
28. Contract, where it shall be held until the transaction is successfully consummated (at Closing) or termination of the transaction.
29. [X] Buyer has not tendered Earnest Money. Buyer will tender by the end of the next banking day following the Effective Date (as
30. defined in Section 9(D)) of this Contract) a sum of $ __**1,000.00**__ as Earnest Money to [CHECK ONE] [ ] Listing Broker
31. [ ] Buyer's Broker, who shall deposit it into a federally insured trust account by the close of business of the next banking day, where
32. it shall be held until the transaction is successfully consummated (at Closing) or termination of the transaction. Buyer shall hold
33. Seller and all Brokers and Salespersons harmless from all claims for damage arising out of or relating to fraudulent or negligent acts
34. of third parties involved with or handling implementation of electronic transfers of Earnest Money. Buyer's failure to tender said
35. sum by the end of the next banking day following the said Effective Date shall constitute a material breach hereof and terminate the
36. Contract unless Seller agrees in writing to extend the time for Buyer to tender Earnest Money and Buyer thereafter timely tenders
37. said Earnest Money. Failure of Buyer to timely tender Earnest Money by the deadline as extended shall terminate the Contract.
38. [ ] See attached Earnest Money Escrow Agreement/Addendum.

39. Any Earnest Money delivered to a non-broker licensee shall immediately be delivered to the Broker responsible for the Earnest
40. Money deposit. In the event any Earnest Money check is dishonored by the bank on which it is drawn, Broker shall immediately
41. notify all parties involved. Should the transaction be terminated prior to Closing through no breach of Buyer, Broker shall return the
42. Earnest Money to Buyer when Buyer is rightfully entitled to it, allowing a reasonable time for clearance of any Earnest Money
43. check. Should the transaction be terminated prior to Closing by reason of Buyer's default and the Seller be entitled to the Earnest
44. Money by virtue of Section 10 hereof, Broker shall deliver the Earnest Money to Seller. In the event of uncertainty as to the proper
45. disposition of Earnest Money, Broker shall interplead the funds in the appropriate court. In the event of interpleader, Buyer and
46. Seller consent to (i) the filing of same by Broker; (ii) jurisdiction in the county where the property, or any part of it, lies; (iii) entry of
47. an order discharging Broker upon deposit of the funds into court; and (iv) deduction against or reimbursement to Broker from the
48. money interplead of all costs necessitated by the filing of the interpleader action, including reasonable attorney's fees, service of
49. process fees and court costs.

**Copyright ©2024 by Mississippi Association of REALTORS®**
**F1 - Contract for the Sale and Purchase of Real Estate**                                                                                                 Rev. Date 10/2024a

America's Realty- Universal, 5472 Watkins Drive Ste E Jackson MS 39206         Phone: 6013626767         Fax:   6019067653                     Marcus Stephenson
James Carson  ,JR                          Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

50. **5. CONTINGENCIES.**
51. **(A) Loan.** ☐ Applicable   ☐ Not Applicable (Check One):
52. ☒ **New Loan** (check appropriate boxes):   ☐ FHA   ☒ VA   ☐ CONV   ☐ USDA Direct   ☐ USDA Guaranteed
53. ☐ Other: _____
54. ☐ **To Be Determined**
55. If applicable, Contract is contingent upon Buyer(s) being approved for a new loan of the type indicated above sufficient to close,
56. provided that Buyer(s) make(s) application in proper form within five (5) business days after the Effective Date of the Contract,
57. diligently and timely pursues the same in good faith, executes all documents and furnishes all information required by the lender
58. processing the application, and makes timely payment of all costs of obtaining loan approval. Seller may request, and Buyer agrees
59. to provide, written documentation from the lender confirming timely application. Failure of the Buyer(s) to make timely application
60. for the type of loan specified or to provide written documentation when requested shall entitle Seller(s), at Seller's(s') option, to (a)
61. excuse the failure in writing and proceed with the transaction, in which case this contingency remains in force; OR (b) give written
62. Notice of intent to terminate contract if Buyer(s) does/do not make timely application within five (5) business days from the date of
63. Notice, in which case Seller(s) may terminate Contract and receive any Earnest Money if Buyer(s) fail(s) to make timely application
64. by close of business on the fifth (5th) business day; OR (c) terminate the Contract and receive any Earnest Money and seek any other
65. remedies available under Section 10 hereof. Should Buyer(s) not receive approval of a loan of the type indicated above, not elect to
66. terminate (and receive refund of Earnest Money) and elect to seek financing of a different type, Seller(s), at Seller's(s') option, may
67. (a) consent in writing to the new loan type and proceed with the transaction, in which case this contingency remains in force; OR (b)
68. consent in writing to the new loan type on the condition that Buyer(s) agree(s) to waive this loan contingency and any Earnest
69. Money deposit becomes non-refundable; OR (c) terminate the Contract and receive any Earnest Money.
70. **(B) No Waste.** This Contract is conditioned upon delivery of the Property and any and all improvements in their present condition,
71. reasonable wear and tear excepted.  Seller shall preserve the Property in its present general condition, normal wear and tear excepted,
72. and shall not permit the Property to suffer waste avoidable by the reasonable exercise of due care.  Any material change to the
73. Property shall be disclosed in accordance with the Real Estate Brokers License Law of 1954, as amended, allowing for termination
74. of the offer as prescribed by law (see Miss. Code Ann., Sec. 89-1-503).
75. **(C) Appraisal.** ☒ Applicable   ☐ Not Applicable (Check One):
76. If applicable, Property must appraise at or above Purchase Price or Buyer shall not be obligated to complete the purchase of the
77. Property and all Earnest Money shall be refunded to Buyer, except when Buyer has failed to secure a timely appraisal in good faith.
78. Failure of Buyer to make good faith efforts to secure a timely appraisal shall constitute a Breach of this Contract.
79. **(D) Warranty And Inspections. (Select One):**
80. ☐ **Sale Without Warranty; No Home Inspection.** Buyer has inspected the Property and finds same to be in satisfactory condition
81. and DOES NOT wish to secure inspections. Buyer accepts the Property in its condition as of the Effective Date of this Contract, and
82. acknowledges that neither Seller nor Listing Broker nor Buyer's Broker or salespersons associated with this transaction have made
83. any warranty, express, implied, or otherwise, as to the Property, except such express warranties as the parties agree to in writing,
84. which shall survive Closing.

85. ☒ **Inspections.** Contract is contingent upon satisfactory inspections conducted by Buyer, at Buyer's expense, for the purpose of
86. evaluating structural and non-cosmetic elements (roof, plumbing, heating, air conditioning, electrical, appliances, pools, spas,
87. treatment systems, irrigation systems or other systems) to determine that they are in proper working order, subject to the provisions
88. of this section. Buyer shall have ten (10) business days from the Effective Date of this Contract (or, in cases of new construction, the
89. date Seller notifies Buyer in writing that a certificate of occupancy has been issued and all metered utilities are turned on) to conduct
90. inspections using Mississippi licensed home inspectors and/or bona fide, qualified contractors **and** make their election as to how to
91. proceed as set forth in this paragraph. Buyer's inspector(s) shall have the right to enter the Property at reasonable hours with
92. twenty-four (24) hours prior notice. On designated inspection date(s), Seller shall provide unlimited access to the Property, and shall
93. see that all metered utilities are on. Should Seller fail to have metered utilities on, Seller shall be responsible to Buyer for foreseeable
94. loss or expense resulting from failed inspections. Within said ten (10) business days, Buyer, at Buyer's option, may:

95. (a) *terminate* this Contract and receive a refund of Buyer's earnest money on the basis of an unsatisfactory inspection as to an
96. identified material structural or material non-cosmetic defect not previously disclosed in a Property Condition Disclosure Statement
97. or other pre-inspection written disclosure; OR

98. (b) *waive* this inspection contingency and proceed to Closing; OR

99. (c) *submit a list of repairs* to Seller accompanied by relevant portions of any inspection report(s) from Mississippi licensed home
100. inspectors and/or bona fide, qualified contractors. Buyer and Seller shall then have ____7____ business days to negotiate and agree

101. in writing how listed items shall be handled (to become an amendment to this Contract) or this Contract shall terminate and Buyer's
102. earnest money shall be returned; failure to timely comply in all respects with the requirements set forth herein shall constitute a
103. waiver of Buyer's right to proceed under this subsection (c) and the parties shall proceed to Closing. Should Buyer proceed under
104. this option (c), the underlying Contract is in full force and effect for the number of business days set forth in L. 100. Seller's
105. rejection of any repairs requested by Buyer does not terminate the Contract; Buyer and Seller shall have until the expiration of the
106. time period in L. 100 to negotiate repairs. Buyer(s) reserve(s) the right to exercise options (a) or (b) at any time during the time period
107. set forth in L. 100 if activated by Buyer's)(s') proper compliance with subsection (c).
108. **(E) Final Walk-Through Inspection.** Irrespective of the election made above, Buyer retains the right to perform a Final Walk-
109. Through Inspection of the Property prior to Closing to verify the terms of the Contract have been fulfilled and to confirm that any
110. Seller repairs or Seller's removal of personal property is complete and has not damaged the Property. **Seller shall provide unlimited**
111. **access to the Property, and shall see that all utilities are on for Final Walk-Through Inspection and continuing through the**
112. **time of Closing,** except as otherwise agreed in writing. As of the date of the Final Walk-Through Inspection, all electrical, plumbing
113. and HVAC systems shall be in good working order.
114. **(F) Wood Destroying Insect Report; Release. (Check One):** ☐ Not applicable ☐ Buyer(s) ☒ Seller(s) shall, at their expense,
115. furnish to the other party an approved FHA/VA Wood Destroying Insect Inspection Report and/or a Mississippi Official Wood
116. Destroying Insect Report (collectively "WDIR") from a licensed, bonded termite company indicating that Property shows no
117. evidence of termite or other wood-destroying insect infestation. The WDIR shall be dated within thirty (30) calendar days of Closing.
118. and shall be delivered to the other party not less than ten (10) calendar days prior to Closing. If infestation or damage is discovered,
119. Seller(s) shall amend the Property Condition Disclosure Statement ("PCDS") as appropriate, and, per 89-1-503 of the Mississippi
120. Code of 1972, Buyer(s) shall have three (3) calendar days after delivery in person or five (5) calendar days after delivery by deposit
121. in the mail of any material amendment of the PCDS to terminate this Contract by delivery of a written notice of termination to the
122. Seller(s) or Seller's(s') agent (Listing Broker or Agent), and have their Earnest Money refunded. Buyer(s) and Seller(s) acknowledge
123. that Listing and Buyer's(s') Brokerages and agents make no representations concerning wood destroying insects or the condition of
124. the Property, and any damage found, either before or after Closing or after termination of this Contract shall not be the responsibility
125. of said Brokerages. **By signing this Contract, Buyer(s) and Seller(s) agree to hold the Brokerages and their agents harmless**
126. **from all claims for damages arising out of or relating to wood destroying insects or the WDIR.** FHA and VA require treatment
127. and may require additional inspections when any active infestation of subterranean termites is found and/or treatment in a previously
128. treated structure showing evidence of subterranean termites but no activity if there is no documentation of a liquid treatment by a
129. licensed pest control company within the previous five years unless the structure is presently under warranty or covered by a service
130. agreement with a licensed pest control company. In the case of a VA loan, the WDIR is deemed a non-allowable expense under VA
131. regulations and may not be paid by Buyer(s); Seller(s) agrees to pay at Closing the cost of such report on behalf of a VA Buyer(s). If
132. a HUD New Construction Subterranean Termite Service Record, or similar form, is required, Seller(s) agree(s) to complete and
133. submit same.
134. **(G) Pre-Closing Loss.** In the event of damage to the Property or improvements before Closing by virtue of causes beyond the
135. parties' control, such as fire, flood, war, acts of God or other causes, Seller(s) shall, within three (3) calendar days of a loss or as soon
136. thereafter as reasonably possible, notify Buyer(s) in writing of said damage, at which time Buyer(s) may, <u>at Buyer's option</u>:
137. **(1)** cancel this contract and be entitled to the return of earnest money deposits; <u>OR</u>
138. **(2)** waive any objection and proceed to Closing on the terms set forth in this Contract; <u>OR</u>
139. **(3)** seek to reach suitable agreement with Seller(s) as to repair(s), extension of the Closing date and/or other adjustments to the
140. Contract as may be agreed upon by the parties. Failure of the parties to reach a suitable agreement within five (5) calendar days after
141. election by Buyer(s) to proceed under this option (3) shall automatically and without further notice cancel this Contract and entitle
142. Buyer(s) to the return of earnest money deposits.
143. **6. CLOSING.**
144. **(A) Deadline to Close.** Closing (evidenced by delivery of deed and payment of Purchase Price) shall take place no later than 11:59
145. p.m. (CST) on the __27th__ day of _____**March**_____ , __**2026**__ (the "Closing Date") or on such earlier date as agreed to by the
146. parties in writing.
147. **(B) Title And Conveyance.** At Closing, Seller shall execute a(n): ☒ **General Warranty Deed** ☐ **Special Warranty Deed**
148. ☐ **Assignment of Lease** ☐ **Quitclaim Deed** vesting title to the Property in (write names clearly):
149. _____ ;
150. Seller, at Seller's expense, shall, prior to or at Closing, satisfy and pay all loans and/or liens affecting the Property and all costs
151. associated therewith and delinquent and unpaid assessments of any homeowner or condominium association (if applicable) for prior
152. years. Title shall be good, marketable and insurable, subject only to the following items recorded in the Chancery Clerk's Office(s)

**Copyright ©2024 by Mississippi Association of REALTORS®**
**F1 - Contract for the Sale and Purchase of Real Estate**

Rev. Date 10/2024a

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com              Marcus Stephenson

153. wherein Property is located: easements without encroachments, applicable zoning ordinances, protective covenants and prior mineral
154. reservations; otherwise Buyer(s), at their option, may (A) if defects cannot be cured by designated Closing Date, terminate this
155. Contract and receive a refund of their Earnest Money; (B) seek suitable amendment of this Contract whereby Seller(s) may cure such
156. defects at Seller's(s') expense and, if no agreement is reached, terminate this Contract and receive a refund of their Earnest Money;
157. or (C) accept title as is and proceed to Closing. Should Buyer(s) incur any expense confirming title which is revealed to be deficient
158. and incurable prior to Closing, Seller(s) shall reimburse Buyer(s) for the cost of any title examination and/or title commitment and
159. any other relief under Section 10 of this Contract.
160. **(C) Proration.** All taxes, rents, utility and other assessments and appropriate condominium or Property Owner's Association fees
161. are to be prorated as of the Closing Date for the year of the sale. [X] [CHECK IF APPLICABLE] Any unused propane shall be
162. determined as of Closing, the cost thereof paid current, and prorated between Buyer and Seller as of the Closing Date.
163. **(D)** ☐ [CHECK IF APPLICABLE] **Seller Contribution at Closing.** At Closing, Seller will pay up to $**4,500.00**
164. to offset total Closing expenses. Seller's contribution does not include any prorated items, charges or fees payable by Seller under
165. any other provision of this agreement or under any separate agreement.
166. **(E) Possession.** Possession shall be delivered to Buyer **(Check One):**
167. ☐ Upon completion of Closing and full funding
168. ☐ By separate **Pre- or Post-Closing Possession Addendum/Amendment** attached and made a part of this Contract
169. **7. DISCLOSURES.**
170. **(A) Multiple Listing Service ("MLS").** The parties authorize disclosure of sales data to the _____**Central MS. Realtors**_____
171. Multiple Listing Service.
172. **(B) Property Condition Disclosure.**
173. **(Select One):**
174. ☐ Buyer acknowledges receipt of a Property Condition Disclosure Statement.
175. *OR*
176. [X] Buyer has not received a Property Condition Disclosure Statement ("PCDS"). Buyer has requested and Seller shall deliver a
177. properly completed PCDS within three (3) business days of the Effective Date of this Contract. Seller's failure to deliver a properly
178. completed PCDS within said time shall entitle Buyer, at Buyer's option, to (a) terminate this Contract and receive a refund of
179. Buyer's earnest money; OR (b) waive receipt of a PCDS and proceed to Closing. Per Section 89-1-503 of the Mississippi Code of
180. 1972, Buyer shall have three (3) days after delivery of the PCDS or any material amendment to the PCDS in person or five (5) days
181. after delivery by deposit in the mail to terminate his or her offer by delivery of a written notice of termination to the transferor
182. (seller) or the transferor's agent (Listing Broker or salesperson) and have their earnest money refunded.
183. **(C) Equal Housing Opportunity.** In accordance with the Fair Housing Act, this Property has been marketed and is being sold
184. without reference to race, color, national origin, religion, sex (including gender identity and sexual orientation), familial status or
185. disability.
186. **(D) Lead-Based Paint Disclosure.** Every Buyer of any interest in residential property on which a residential dwelling was **built**
187. **prior to 1978** is notified that such subject property may present exposure to lead from lead-based paint that may place young children
188. at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including
189. learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a
190. particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any
191. information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the Buyer of any
192. unknown lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to
193. purchase.
194. **(E) Wire Fraud Warning; Release.** Buyers and Sellers of real property are targets in scams regarding electronic transfers of
195. money (i.e., wire transfers, direct deposits, electronic checks, etc.). NEVER transfer funds associated with this transaction based
196. upon electronic communications (such as email) that have not been **verbally confirmed** by you to be valid (from a person you know
197. and trust) and accurate. Email scammers can disguise emails, text messages and social media messages to appear to be from your
198. real estate agent, title companies, attorneys, your bank or other parties. Do not trust any communication you receive concerning
199. transfer of funds without taking steps to verify that these funds are, in fact, going to the proper recipient. Do not use telephone
200. numbers or email addresses in electronic communications you receive; they may be fraudulent and part of a scam. VERIFY
201. telephone numbers, contact people and wiring instructions BEFORE you respond. Fraudulent communications or acts should be
202. reported immediately to the FBI and law enforcement authorities, and should be done so <u>immediately</u> if funds are lost. **By signing**
203. **this Contract, Buyer and Seller acknowledge receipt of this notice and agree to hold the brokerages and their agents harmless**
204. **from all claims for damages arising out of or relating to inaccurate transfer instructions, fraudulent taking of such funds, and**
205. **any and all other damages relating to conduct of third parties influencing or handling implementation of wire transfers.**

206. **(F) Audio & Video; Photography.** Owners, Sellers, Invitees and Buyers of real property using audio and/or video surveillance or
207. remote monitoring devices or devices capable of photography, videography or videotelephony are solely responsible for compliance
208. with applicable state, local and federal laws concerning use of such devices including, but not limited to, cameras, phones, security
209. systems, monitors or other devices capable of making or transmitting audio and/or video recordings and/or photographs.  Audio or
210. video recordings or photographs may be illegal under state, local and/or federal laws, depending on the circumstances.  Sellers and
211. Buyers are urged to consult legal counsel concerning applicable laws and take steps to protect against practices violative of rights of
212. persons owning, inhabiting, utilizing, viewing or visiting the property. **By signing this contract, Buyer and Seller acknowledge**
213. **receipt of this notice and agree to hold the brokerages and their agents harmless from all claims (excepting only claims under**
214. **the exclusive jurisdiction of the Mississippi Real Estate Commission under license law or claims under the National**
215. **Association of REALTORS® Code of Ethics and Arbitration Manual) or damages arising out of use of video and audio**
216. **surveillance systems or photography, videography or videotelephony.**
217. **8.  BROKERS AND SALESPERSONS.**
218. **(A)** The Brokers and Salespersons involved in the transaction associated with this Contract are as follows:
219. Buyer's Brokerage Firm: **America's Realty- Universal**            Buyer's Agent: **James Carson  ,JR**
220. Buyer's Brokerage Firm Address: **5472 Watkins Drive Ste E, Jackson, MS  39206**
221. Buyer's Brokerage Firm License No.: _____  Buyer's Agent License No.:_____
222. Buyer's Brokerage Firm Phone: **(601)362-6767**           Buyer's Agent Phone: **(601)362-6767**
223. Buyer's Agent Email:**jameswcarson@comcast.net**

224. Listing Brokerage Firm: **Southern Homes Real Estate**          Listing Agent: **Victoria Prowant**
225. Listing Brokerage Firm Address:_____
226. Listing Brokerage Firm License No.: _____  Listing Agent License No.: _____
227. Listing Brokerage Firm Phone:_____         Listing Agent Phone:_____
228. Listing Agent Email: **BaileyCanadaRealtor@gmail.com**
229. **(B) Agency Relationship. (Check One):**
230. ☐ The Listing Brokerage and its salespersons represent the Seller(s) as their Client(s). The Buyer(s) is/are unrepresented and is/are
231. the customer(s).
232. ☐ The Listing Brokerage and its salespersons represent the Seller(s). The Buyer's Brokerage and its salespersons represent the
233. Buyer(s).
234. ☐ The Listing Brokerage and its salespersons represent both Seller(s) and Buyer(s) as dual agents by mutual agreement and all
235. parties have signed and understand the Dual Agency Confirmation form provided to them by the Listing Brokerage.
236. ☐ The Buyer's Brokerage and its salespersons represent the Buyer(s). The Seller(s) is/are unrepresented and is/are the customer(s).
237. **(C) Compensation.**
238. **(a) Seller(s) and Buyer(s) acknowledge that fees paid to Brokerages are not set by law, are fully negotiable, and offers of**
239. **compensation, if made, are not blanket, unconditional or unilateral.** The parties authorize delivery of a copy of this
240. Agreement to Closing agent. The parties authorize and instruct Closing agent to disburse any payments due to Brokerages
241. directly out of sale proceeds.
242. **(b) Buyer's Brokerage Compensation. (CHECK ONE):**
243. ☐ There is no Buyer's Brokerage Compensation.
244. ☐ Buyer(s) shall pay all Buyer's Brokerage Compensation by separate agreement.
245. ☐ Seller and/or Listing Brokerage shall offset Buyer's obligation to pay Buyer's Brokerage by paying the following
246. **(CHOOSE ALL THAT APPLY)**:

247.     **Paid upon Closing by Seller(s):**
248.         ☐    **2.500**   % of Gross Sales Price
249.         ☐  $ _____

250.     **Paid upon Closing by the Listing Brokerage from compensation received from Seller(s) under separate**
251.     **agreement:**
252.         ☐  _____% of Gross Sales Price
253.         ☐  $ _____

254.         **Buyer(s) warrant(s) that the total Compensation paid to Buyer's Brokerage from all sources does not exceed**
255.         **that authorized by Buyer's(s') agreement with Buyer's Brokerage.**

256. **(D) No Reliance; Release.** Seller and Buyer acknowledge that neither them, nor their agents, have relied upon any statement,
257. representation or omission made or documentation provided by the Brokers, salesperson(s), or their representatives, relating to any
258. aspect of this transaction, the Property or otherwise including, but not limited to, terms or conditions of sale, tax or legal
259. considerations, liability, size, square footage or condition of the Property, presence or lack thereof of urea formaldehyde foam
260. insulation (UFFI), presence or lack thereof of exterior insulation finish systems (EIFS), previous or present flooding, flood zones,
261. flood insurance, history of title or use, effect of or location within Mississippi State Tidelands or Federal wetlands, presence or
262. absence of mold or other toxic substances, presence or lack of expansive soils, presence or absence or enforceability of acceleration
263. clauses or tax or balloon notes, names or recommendations concerning vendors of any sort whatsoever or validity or accuracy of any
264. reports rendered thereby. **By signing this Contract, Buyer and Seller acknowledge receipt of this disclosure and agree to hold**
265. **the brokerages and their agents harmless from all claims for damages arising out of or relating to any representations in this**
266. **section.**
267. **(E) Liability.** Broker's liability to Buyer and Seller in this transaction shall not exceed the amount it has received as compensation.
268. **9. GENERAL.**
269. **(A) Agreement Complete.** This Contract incorporates all prior agreements between the parties, contains the entire and final
270. agreement of the parties and cannot be changed except by their written mutual consent. Neither party shall be bound by any terms,
271. conditions, oral statements, warranties or representations not herein contained.
272. **(B) Read And Understood.** Each party acknowledges and hereby affirms that it has read and understands this Contract.
273. **(C) Assignment.** This Contract shall not be assignable by either party without consent of the other party.
274. **(D) Effective Date.** For purposes of this Contract the Effective Date is the date the last necessary party signs and delivers a copy
275. thereof to the other party or their agent.
276. **(E) Survival Of Contract.** All express representations, warranties and covenants shall survive termination of the Contract or
277. Closing unless specified to the contrary. All other contractual obligations shall terminate at Closing.
278. **(F) Time Is of the Essence; Business Day Defined.** <u>Time is of the essence as to all time periods and deadlines stated in this
279. Contract</u>, and delay in performance is not excused unless expressly excused in writing signed by all parties. The foregoing or any
280. other provision in this Contract notwithstanding, any unavoidable delay necessitated by applicable law or regulations shall extend
281. any affected deadline by no more than the actual number of days of delay necessitated by such law or regulation. For purposes of
282. this Contract, "business day" means any day that is not a Saturday, Sunday or legal holiday, commencing at 12:01 a.m. and ending
283. at 11:59 p.m.
284. **(G) NOTICES.** Any notices required to be delivered under this Contract shall be hand-delivered to the recipient or recipient's
285. agent or, at sender's option, emailed to an email address below. Emailed notices shall be deemed delivered as of the date transmitted.

286. Seller's(s') email: _____
287. Listing Agent email: **jameswcarson@comcast.net**_____
288. Buyer's(s') email: **stephensonmarcus769798@gmail.com**_____
289. Buyer's(s') Agent email: **victoriaprowant@yahoo.com**_____

290. **10. BREACH; ATTORNEY FEES & COSTS.** In the event of a default by either party under this Contract, the non-breaching
291. party shall have the right to receive from Broker the Earnest Money paid under Section 4 of this Contract, to be a credit against any
292. other damages, in addition to such other remedies as it may have under applicable law including, but not limited to, specific
293. performance. If it becomes necessary for any party to initiate litigation relating to this Contract, then the non-prevailing party agrees
294. to pay reasonable attorney fees and court costs in connection therewith to the prevailing party.

Page 6 of 8

**Copyright ©2024 by Mississippi Association of REALTORS®**
**F1 - Contract for the Sale and Purchase of Real Estate**

Rev. Date 10/2024a

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Marcus Stephenson

295. **11. SPECIAL PROVISIONS. (If None, Write "NONE" Below):**
296. _____
297. _____
298. __**Court approval of the sale needed**_____
299. _____
300. _____
301. _____
302. _____
303. _____
304. _____
305. _____
306. _____
307. _____
308. _____
309. _____
310. _____
311. _____
312. _____
314. _____
315. _____
316. _____
317. _____
318. _____
319. _____
320. _____
321. _____
322. **12. EXPIRATION OF OFFER.** This offer expires at _____ o'clock ☐ **AM** ☐ **PM,** Central Standard Time (CST) on
323. ____**February 16, 2026**_____ [date] if not accepted, countered or rejected by Seller, with a copy delivered to Buyer or their
324. agent, by that time.

325. **13. ATTACHMENTS. (Check All That Apply):**
326. ____ Dual Agency Confirmation                    ____ Lead-Based Paint Disclosure
327. ____ Pre-Closing Repair/Improvement Amendment    ____ Option Agreement
328. ____ First Right of Refusal Addendum             ____ Back-Up Contract Addendum
329. ____ Pre-Closing Possession Addendum/Amendment   ____ VA/FHA Disclosures (as required)
330. ____ Post-Closing Possession Addendum/Amendment  ____ FHA/VA/HUD Addendum
331. __X__ Other **Proof of Funds**_____

332. **14. HEADINGS; SINGULAR AND PLURAL SAME:** Headings are inserted for the convenience of the Parties only and are not
333. to be considered when interpreting this document. Words in the singular mean and include the plural and vice versa. Words in the
334. masculine gender include the feminine gender and vice versa. Words in the neutral gender include the masculine gender and the
335. feminine gender and vice versa.

336. **15. SIGNATURE BLOCKS.**

337. Signed this the _____ day of _____ , _____ , at _____ ☐ a.m. ☐ p.m., and a **copy** hereof received:
338. BUYER [DocuSigned by: _signature_ Feb-10-2026]  BUYER _____
339. Phone: _796499100860403..._____  Phone: _____

340. The foregoing offer is **accepted** this the _____ day of _____ , _____ , at _____ ☐ a.m. ☐ p.m.,
341. and a **copy** hereof received:
342. SELLER [Jerrick Rose — dotloop verified 02/11/26 9:43 PM CST XHJ4-NBI1-0OBM-ZL1K]  SELLER _____
343. Phone: _____  Phone: _____

344. The Seller has **countered** this offer subject to the terms of the attached Counter Offer No. _____ this the _____
345. day of _____ , _____ , at _____ ☐ a.m. ☐ p.m., and a **copy** hereof received:
346. SELLER _____  SELLER _____

347. The Seller has received a copy of this offer and **rejected** same and make no counter offer this the _____ day of
348. _____ , _____ , at _____ ☐ a.m. ☐ p.m.,  and a **copy** of this rejection has been delivered
349. to Buyer.
350. SELLER _____  SELLER _____

351. The foregoing offer is **accepted** as a **Back-Up Contract** per the terms of the attached **Back-Up Contract Addendum**, and a copy
352. hereof (with addendum) received this _____ day of _____ , _____ , at _____ ☐ a.m. ☐ p.m.
353. SELLER _____  SELLER _____

**NOTE**: Buyer(s) must sign Back-Up Contract Addendum within twenty-four (24) hours of date above or Seller's acceptance of offer is null and void and is deemed rejected.

Copyright ©2024 by Mississippi Association of REALTORS®
F1 - Contract for the Sale and Purchase of Real Estate
Rev. Date 10/2024a
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com
Marcus Stephenson