**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| | ) | |
| **IN RE:** | ) | |
| | ) | |
| **ROSE RENTAL PROPERTIES, LLC** | ) | **Case No. 25-03091** |
| | ) | |
| **Debtor** | ) | **Chapter 11** |
| | ) | |
| | ) | |

## OBJECTION TO CONFIRMATION OF DEBTOR'S SUBCHAPTER V CHAPTER 11 LIQUIDATION PLAN [139] BY COMMUNITY BANK

Community Bank of Mississippi ("Community Bank"), a secured creditor and party in interest in the above-referenced Chapter 11 Subchapter V bankruptcy case (the "Bankruptcy Case"), pursuant to 11 U.S.C. §§ 1129, 1191, 363, 552, 1123, Federal Rules of Bankruptcy Procedure 3015 and 3020, and the Local Rules of the United States Bankruptcy Court for the Southern District of Mississippi, submits this objection to confirmation of the *Subchapter V Chapter 11 Liquidation Plan* (Dkt. #139, the "Plan") filed by Debtor Rose Rental Properties, LLC (the "Debtor"), and states as follows:

### BACKGROUND

1. As evidenced by the timely filed proof of claim of Community Bank in this Bankruptcy Case and all supporting documents and exhibits thereto (Claim # 6, the "CB POC"), Community Bank is the holder of properly perfected liens upon and security interests in and with respect to all real property assets and rents and proceeds therefrom of the Debtor herein, and additionally holds first-priority properly perfected liens upon and security interests in and with respect to the real property and rents and proceeds

1

therefrom of the Debtor's real property located at 1046 Whitworth Street in Jackson, Mississippi. The filed CB POC is incorporated by reference herein for all purposes.

2.     Community Bank's liens and security interests secure the repayment and satisfaction of all indebtedness borrowed by the Debtor from Community Bank and owed and becoming owed under each of the forty-three (43) loans (the "CB Loans") sought out by the Debtor and obtained from Community Bank, which indebtedness includes principal, accrued interest, fees, charges and expenses, and attorneys' fees, costs, and expenses, pursuant to and as further described in the terms and conditions of the loan documents, deeds of trust, and related documents and agreements entered into and executed by the Debtor in favor of Community Bank (collectively, the "CB Loan Documents"), including as evidenced by the CB POC pursuant to applicable law (collectively, the "CB Secured Claim").

3.     One or more events of default occurred with respect to the CB Loans prior to the date of filing of the petition by the Debtor herein, including but not limited to failure(s) to timely remit required payments due and owed to Community Bank by the Debtor in accordance with the terms and conditions of the CB Loan Documents. The Debtor also defaulted under the loan documents' terms by, *inter alia*, failing to timely pay and satisfy the real property tax obligations owed concerning certain of the real property collateral subject to Community Bank's properly perfected liens on all real properties of the Debtor.

4.     All CB Loans remain unpaid and outstanding to Community Bank. Additional interest continues to accrue and become due and owed to Community Bank

2

as set out in the CB Loan Documents, and Community Bank has incurred and continues to incur fees, costs, and expenses (including but not limited to attorneys' fees and costs) as a result of and in connection with the uncured defaults by the Debtor under the terms of the CB Loan Documents, all of which amounts have become and continue to become a part of the CB Secured Claim owed to Community Bank by the Debtor secured by all real property, rents, and proceeds of the Debtor, as further described in the CB Loan Documents.

5.     Community Bank has received no payments, sale proceeds, or other amounts for application to the indebtedness owed by the Debtor subject to the CB Secured Claim from or after the petition date herein.

6.     The CB Secured Claim is at least $443,381.86 ((i) principal, interest, fees and charges through March 31, 2026, and (ii) attorneys' fees and expenses incurred by Community Bank through March 17, 2026) plus (i) interest accruing from and after March 31, 2026, (ii) attorneys' fees and costs incurred from and after March 17, 2026, and (iii) other amounts owed and becoming owed to Community Bank pursuant to and in accordance with the terms and conditions of the CB Loan Documents in connection with the CB Loans as evidenced by the CB POC.

**PRELIMINARY STATEMENT**

7.     The Debtor seeks confirmation of a non-consensual Subchapter V plan that impermissibly rewrites Community Bank's bargained-for lien rights under applicable non-bankruptcy law, conflicts with certain orders entered by this Court authorizing the Debtor's use of cash collateral and granting adequate protection, relies upon speculative

future sales and refinancing as described in Plan §§ 4.2, 4.3, and 5.1, and fails to satisfy the heightened cramdown requirements applicable under 11 U.S.C. § 1191(b) and (c). For the independent and alternative reasons set forth below, Community Bank respectfully submits that the Plan in its current form cannot properly be confirmed.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## OBJECTIONS TO CONFIRMATION

### A.  The Plan Fails to Satisfy the Cramdown Requirements of 11 U.S.C. § 1191(b) and (c).

9.     Because Community Bank's second-priority Secured Claim is impaired as well as its first-priority Secured Claim and Community Bank has not accepted the Plan, the Plan is non-consensual, and the Debtor bears the burden of satisfying § 1191(b) and the enhanced protections of § 1191(c) applicable in Subchapter V cases. The Plan does not meet that burden.

*Failure to Provide Fair and Equitable Treatment (§ 1191(c)(1))*

10.     Section 1191(c)(1) expressly incorporates the secured creditor protections of § 1129(b)(2)(A) and requires, at a minimum, retention of liens and deferred cash payments totaling the allowed amount of the CB Secured Claim with a market-appropriate discount rate. The Plan impermissibly modifies Community Bank's lien

4

package including rents and process contrary to the orders agreed to by the parties and/or entered by this Court as of the date of this Objection filing.

11. The Plan defers realization to Community Bank without any payment certainty. The Plan provisions impermissibly delay payment of Community Bank's allowed secured claim by conditioning repayment on future asset sales and refinancing described in Plan §§ 4.2 and 5.1, thereby denying the Bank the present value of its claim and improperly shifting market risk to the secured lender, effectively converting secured debt into contingent equity risk. This is impermissible pursuant to § 1129(b)(2)(A).

*Failure to Provide the Indubitable Equivalent (§ 1191(c)(2))*

12. The Plan does not provide the indubitable equivalent of the CB Secured Claim. Delayed open-ended liquidation without a timeframe, like forced maturity extensions or speculative payment streams, dependent on future events and expressly contemplating delayed realization do not satisfy § 1129(b)(2)(A)(iii), as incorporated into Subchapter V. "Indubitable equivalent means that which is certain, not speculative." *In re Pacific Lumber Co.*, 584 F.3d 229, 246 (5th Cir. 2009).

13. The Plan does not provide immediate cash, property substitution with equivalent value, or fully secured present-value payments to Community Bank; delayed liquidation or hope-based payment is not indubitable equivalence under § 1129(b)(2)(A)(iii) as incorporated by § 1191(c).

14. The Plan, moreover, fails to provide for retention by Community Bank of its liens or the receipt by Community Bank of full present value of its liens upon and security interests in the collateral securing repayment of the CB Secured Claim. There is

no protection provided in the Plan for Community Bank's secured interests, and Community Bank has not received a payment or proceeds of any kind since filing of the petition by the Debtor. What's more is it is impossible to determine from the Plan provisions when, if ever, the Debtor contemplates providing the guaranteed rights and protections required by the Bankruptcy Code to secured lienholder Community Bank, yet it contemplates continuing to use Community Bank's cash collateral to market, consummate, and close upon sales of the real property collateral and to remit every cent of sales proceeds to Citizens for an incalculable period of time, leaving Community Bank without the benefit of its rights in or the value of its liens upon any of the collateral, with no assurances of any kind.

**B. The Plan Violates 11 U.S.C. § 1129(a)(1) by Conflicting with the Bankruptcy Code and Prior Orders of This Court**

15.     A plan may not override or contradict prior orders of the Court. The Plan's treatment of rents, proceeds, and sale revenues in Plan §§ 4.1 through 4.3 conflicts with the cash collateral orders entered by this Court and violates 11 U.S.C. §§ 363(c), 552(b), and 1129(a)(1). Community Bank's perfected liens cover all rents, profits, proceeds and revenues of all real property of the Debtor, and its rights and interests continue post-petition. The plan fails to acknowledge Community Bank's properly perfected liens upon and security interests in all rents, operating income, proceeds and revenues, and proposes to treat the same as operating income in violation of §§ 363(c), 551, 552(b), and therefore fails § 1129(a)(1). Community Bank's liens on and security interests in all rents, sales proceeds, and revenues must be preserved until payment of the CB Secured Claim or

surrender of the collateral. The Plan, moreover, impermissibly modifies lien enforcement, timing and collateral access, failing § 1124.

### C. The Plan Is Not Feasible (§§ 1129(a)(11) and 1191(a))

16.     The Plan is not feasible because it depends on future § 363 sales not yet approved by or even before the Court, speculative financing, and ongoing use of fully encumbered rents, revenues and proceeds already constituting Community Bank's cash collateral as its operating capital, as reflected in Plan § 5.1.

17.     Moreover, as the Debtor sells properties subject to the liens of Citizens and Community Bank, the Debtor proposes to pay all proceeds directly to Citizens, fails to provide how many properties will be sold before Community Bank will receive proceeds or the benefit or indubitable equivalent of its secured claims, and fails to provide any basis upon which this Court or Community Bank may reasonably conclude that its rights, claims and interests in and with respect to its collateral and security and the value of its secured claims will be protected.

18.     Community Bank is entitled to the full benefit of its collateral package. The Plan fails to provide for this with respect to Community Bank's liens and security interests in and with respect to all real properties and all rents, revenues, and sales proceeds.

19.     The Plan provides no data or proformas demonstrating or indicating the likelihood of all sales as the Debtor's Plan contemplates, the Debtor has not located buyers for any additional properties, and there are no reasonable assurances of commercial viability concerning the proposed events for purposes of consummating the

7

Plan. No data, documents or records are provided, and no provision is made of any kind to demonstrate or allow the Court to attempt to reasonably conclude its feasibility, with zero protections provided for Community Bank's secured liens and interests and the value of its rights with respect to the real properties, rents, revenues and sales proceeds.

20.     All rental income constitutes Community Bank's cash collateral. Revenue from rents and proceeds from sales cannot simultaneously serve as adequate protection and fund any unsecured distributions or allow for retention by equity, particularly where – as here – the Plan expressly contemplates that all sales proceeds will be remitted directly to Citizens for application to its secured claims. This defect, alone, demonstrates that the Plan is not feasible.

**D. The Plan Violates the Absolute Priority Rule and Disposable Income Requirements (§§ 1191(b)(2) and 1129(b))**

21.     To the extent the Plan permits equity holders to retain interests under Plan § 6.2 while Community Bank is not paid in full, it violates the absolute priority rule as incorporated into Subchapter V. Additionally, The Plan further fails to commit all projected disposable income over the applicable commitment period and fails to provide for any payments to Community Bank.

22.     Moreover, to the extent the Plan strips Community Bank's liens on rent, revenue and proceeds, would terminate proceeds liens at remittance of sales proceeds to Citizens or upon confirmation, and may effectively replace Community Bank's liens with only unsecured payment promises and a complete absence of any source from which to

make those payments, the Plan fails § 1191(a)(1) before the Court even reaches § 1191(b) – which is the case here.

**E.  The Plan's Attempt to Reconstitute Community Bank's Secured Liens and Rights May Indicate the Plan Was Not Proposed in Good Faith**

23.    The Plan constitutes an improper end-run around the Court-approved cash-collateral and sale orders and agreed orders agreed to by the parties by attempting to reallocate lien rights held by Community Bank through Plan confirmation rather than consent, evidencing a lack of good faith.

**F.  The Plan Violates § 552(b) Regarding Post-Petition Rents & Proceeds**

24.    Community Bank's liens and security interests and replacement liens on all rents, revenues, and sales proceeds, have been properly preserved by all cash collateral orders entered by this Court and the final cash collateral order agreed to and approved by the parties for submission to the Court for entry (as of the date of filing of this Objection).

25.    The Plan cuts-off, limits or conditions Community Bank's post-petition liens on rents, proceeds, and sale revenues, and/or re-characterizes them as operating income or plan funding, in violation of § 552(b). Because the Plan violates § 552(b), it is not confirmable under § 1129(a)(1). constitutes an improper end-run around the Court-approved cash-collateral and sale orders and agreed orders agreed to by the parties by attempting to reallocate lien rights held by Community Bank through Plan confirmation rather than consent, evidencing a lack of good faith.

### G. Failure to Specify Treatment of Community Bank's Secured Claims With Required Specificity Pursuant to §§ 1123(a)(3) & (5)

26.     The Plan references vaguely future sales, net proceeds, or refinancing, with no parameters, dates, timelines, amounts or processes. The Plan fails to provide for the proposed waterfall for rents or proceeds. The entirety of the Plan is speculative, open-ended, and absent of specificity on any details which may allow this Court to conclude that Community Bank's material rights with respect to its liens and the values of its interests in the collateral are being protected.

27.     All Plan provisions are vague, ambiguous, and leave critical protections and rights of Community Bank as a secured lender holding properly perfected liens upon and security interests in all assets of the Debtor including all rents, revenues, and sales proceeds to speculation, chance, and well-wishing, with zero protections for Community Bank, no payments, no cash, and yet promises guaranteed losses at every proposed sale of more and more of Community Bank's collateral.

### H. Improper Treatment of Fees, Costs, and Protective Advances

28.     The Plan fails to properly provide for contractual attorneys' fees, default interest, and protective advances expressly preserved under the Final Cash Collateral Order and Community Bank's loan documents, further precluding confirmation.

### I. Improper Classification of Community Bank's Secured Claims Under § 1122

29.     The Plan improperly classifies secured claims in a manner indicating manipulation of voting outcomes rather than reflective of legitimate differences in legal

rights. The Plan separately classifies Community Bank's secured claims without a permissible or legitimate business justification.

### J.  Reservation of Plan Modification, Waiver, or Amendment Rights

30.    To the extent that the Plan reserves rights to amend material terms after confirmation without consent of Community Bank or approval of this Court with renewed disclosure, Community Bank objects to confirmation of the Plan. Creditors are entitled to vote on the Plan received, not a version which may be materially altered or implemented later.

### CONCLUSION

31.    Community Bank is impaired on all secured claims, both first- and second-priority. The Plan modifies lien enforcement, timing and collateral access, fails to preserve Community Bank's liens upon and security interests in its collateral securing the CB Secured Claim, and fails to provide the indubitable equivalent of its rights, claims and interests and cannot be crammed down. Because the Plan is non-consensual, confirmation is barred absent strict compliance with § 1191(c). Community Bank therefore respectfully requests that the Court deny confirmation of the Plan, or alternatively require Plan modification to pay Community Bank in full from sale proceeds, or surrender of collateral securing the CB Secured Claim to Community Bank; (b) preserve all liens, rents, and priority rights; and (c) eliminate equity retention until Community Bank's secured claims have been paid and satisfied in full.

## RESERVATION OF RIGHTS & CLAIMS

32.     Community Bank reserves all rights, claims, defenses, and objections, including additional grounds for its objection to confirmation and further support for those set forth hereinabove. Community Bank further expressly reserves all valuation objections, rights to dispute claim amounts, rights to dispute lien-priorities concerning specific collateral, to object to assumption / rejection in the Plan, and reserves all rights under the CB Loan Documents and applicable non-bankruptcy law. Community Bank further reserves all additional and other arguments in support of this objection which may be presented by supplemental objection or reply and/or at any status conference(s) and/or hearing(s) held by this Court.

**WHEREFORE, PREMISES CONSIDERED**, Community Bank respectfully objects to confirmation of the Plan of the Debtor and requests entry of an Order by this Court denying confirmation of the Plan, or, in the alternative, requests entry of an Order modifying the Plan subject to and as contemplated by this Objection and consistent with the rights, claims and protections provided by the Bankruptcy Code, applicable rules, and all applicable law, to Community Bank as a secured creditor holding properly perfected liens upon and security interests in all real property, rents, revenues, and proceeds, and cash collateral of the Debtor herein, securing repayment and satisfaction of the indebtedness and obligations owed and becoming owed by the Debtor to Community Bank in connection with the CB Loans and as provided by the CB Loan Documents and required by applicable non-bankruptcy law, specifically providing for (a) payment to Community Bank in full from sale proceeds and/or surrender of collateral

12

securing the CB Secured Claim to Community Bank, (b) preservation of all liens, rents, and priority rights, and (c) elimination of equity retention until Community Bank's secured claims have been paid and satisfied in full, or other rights or protections to which Community Bank is entitled pursuant to the Bankruptcy Code and applicable rules. Community Bank further requests general relief.

Dated: April 8, 2026          Respectfully submitted,

**COMMUNITY BANK OF MISSISSIPPI**

BY:          */s/ Sarah Beth Wilson*
             Sarah Beth Wilson, MB #103650
             PHELPS DUNBAR LLP
             1905 Community Bank Way, Suite 200
             Flowood, MS 39232
             Telephone: 601-352-2300
             Telecopier: 601-360-9777
             Email: sarah.beth.wilson@phelps.com
             *Attorney for Community Bank of Mississippi*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on this date I caused the above and foregoing to be filed electronically with the Clerk of the Court using the CM / ECF system which sent notification of such filing to all counsel of record in the above-referenced action including but not limited to:

Thomas C. Rollins, Jr.
*Attorney for Debtor*

Craig M. Geno
*Subchapter V Trustee*

Office of the U.S. Trustee

Dated: April 8, 2026.

/s/ Sarah Beth Wilson
Of Counsel

13

PD.61439282.1