**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE: ROSE RENTAL PROPERTIES, LLC, DEBTOR          CASE NO. 25-03091-KMS

**OBJECTION OF THE CITIZENS NATIONAL BANK OF MERIDIAN**
**TO CONFIRMATION OF DEBTOR'S SUBCHAPTER V**
**CHAPTER 11 LIQUIDATION PLAN [DKT. 139]**

The Citizens National Bank of Meridian ("Citizens") objects to confirmation of the Debtor's Subchapter V Chapter 11 Liquidation Plan (Dkt. 139, the "Plan") filed by Rose Rental Properties, LLC (the "Debtor"), and for cause would show as follows:

1.      Citizens is the primary secured creditor in this case. The Debtor is indebted to Citizens under two commercial obligations: (a) Commercial Promissory Note No. ****6502 with a maturity date of August 21, 2025, and (b) Commercial Line of Credit Agreement and Note No. ****7063. The combined balance due totals $1,692,271.10, which includes all principal, interest, and fees through March 2, 2026, as well as attorneys' fees through February 13, 2026, plus accruing interest thereafter, costs and fees. Citizens holds duly recorded Deeds of Trust and Assignments of Leases and Rents on twenty (20) rental properties in Hinds, Rankin, and Madison Counties, Mississippi.

2.      Citizens previously filed a Motion for Relief from the Automatic Stay (Dkt. 111) on the grounds that this case presents a mathematically impossible reorganization. The Debtor has admitted under oath that liquidation is "the way out" and that the only path forward is selling properties. The Debtor then filed the Plan on March 3, 2026 — a liquidation plan — confirming that no reorganization will occur. While Citizens supports an orderly supervised sale process in principle, the Plan as proposed fails to satisfy the requirements of 11 U.S.C. §§ 1129 and 1191, fails to adequately protect Citizens' interests, and cannot be confirmed in its current form.

3.      Citizens has not accepted the Plan. Citizens' claims are impaired. Accordingly, the Debtor must satisfy the non-consensual confirmation requirements of 11 U.S.C. § 1191(b) and the enhanced protections of § 1191(c). The Plan fails on multiple grounds.

1

4.      Section 1191(c)(1) expressly incorporates the secured creditor protections of § 1129(b)(2)(A), which require at minimum: (a) retention of liens; and (b) deferred cash payments totaling the present value of Citizens' allowed secured claim. The Plan provides no deferred cash payments to Citizens whatsoever during the sale period. Instead, it conditions all payment on the speculative future sale of twenty (20) properties at sufficient prices. The Plan provides no interest on Citizens' claim during the sale period, no adequate protection payments to Citizens beyond replacement liens, and no certainty of payment timing. This fails § 1191(c)(1) as a matter of law.

5.      Delayed, open-ended liquidation without present-value payment protection does not satisfy the "indubitable equivalent" standard of § 1129(b)(2)(A)(iii), as incorporated by § 1191(c).

6.      The Debtor has been delinquent on all debt service to Citizens since at least August 2025 — now more than eight months. Interest, fees, and attorneys' fees continue to accrue daily against Citizens' collateral. The Plan provides no mechanism for current payment of this accruing deficiency. The equity cushion Citizens would need to rely upon is eroding with each passing month through:

(a)      Accruing unpaid interest at contract and default rates;

(b)      Accruing attorneys' fees and costs;

(c)      Deferred maintenance and deterioration of collateral properties;

(d)      Carrying costs during an extended sale and auction process of up to 270 days (plus 330 days for Rehabilitation Properties); and

(e)      The Debtor's admitted inability to fund continued operations without personal capital infusions from Dr. Rose that are no longer available.

7.      With liquidation costs including 6% broker commissions ($186,120), closing costs ($50,000–$75,000), deferred maintenance ($100,000+), and carrying costs ($75,000–$100,000) totaling $436,120–$511,120, the alleged equity cushion available to protect Citizens is rapidly diminishing.

8.      The Plan provides sale timelines of up to 180 days for broker marketing of Non-Rehabilitation Properties and 270 days for auction, with Rehabilitation Properties permitted up to 330

days from the Effective Date. The Debtor has been in bankruptcy since December 4, 2025. An additional 270–330 days under a liquidation plan should not be allowed.

9.      If the Court is inclined to confirm a liquidation plan, Citizens requests that the Plan be modified to: (a) require all properties to be listed within 14 days of the Effective Date (not just Non-Rehabilitation Properties); (b) shorten the sale period to 90 days; (c) shorten the auction period to 60 days following the sale deadline; (d) eliminate or substantially shorten the Rehabilitation Property exception, given that Dr. Rose has admitted his personal funds are exhausted; and (e) require monthly adequate protection payments to Citizens of at least $12,500 during the sale period.

10.      The Plan designates three properties — 144 Reynolds Street, 521 Tammy Drive, and 749 Clearmont Drive — as "Rehabilitation Properties" to be renovated solely with Dr. Rose's personal funds over 150 days before listing. Dr. Rose has already admitted under oath at the 341 meeting that his personal savings are exhausted and he can no longer fund operations. The Plan provides no evidence that Dr. Rose has or will have funds sufficient to rehabilitate three properties, no budget for rehabilitation, no timeline for completion, and no mechanism by which Citizens or the Court can verify compliance. These provisions are entirely speculative.

11.      Allowing 330 days from the Effective Date for Rehabilitation Properties to close is inequitable. Citizens should not be forced to carry the cost and risk of Dr. Rose's personal rehabilitation venture.

12.      Paragraph 23 of the Plan provides that a "material default" only occurs if the Debtor fails to comply with sale deadlines and such failure continues for fifteen (15) days after written notice, with an additional opportunity to cure or seek an extension for "good cause." This provision — combined with the Plan's narrow definition of what constitutes a "material" delay — gives the Debtor multiple additional layers of protection beyond what the Bankruptcy Code requires. Citizens should not bear the burden of proving a default is "material" or "non-technical" each time the Debtor misses a sale deadline. The Plan should provide that Citizens may be granted immediate relief from stay if any sale deadline passes without a closed transaction, without the additional procedural hurdles imposed by Paragraph 23.

13.     Under 11 U.S.C. § 1191(c)(2), a non-consensual plan must provide that all of the Debtor's projected disposable income received during the applicable period will be applied to make payments under the plan. The Plan's Paragraph 28 nominally acknowledges this requirement but states only that "projected disposable income, if any" will be applied. Given that the Debtor is generating net rental income of $4,000–$7,000 per month by its own admission, there is demonstrable disposable income. That income should be directed to Citizens as adequate protection, not consumed by operating expenses alone.

14.     The Plan broadly reserves the Debtor's right to object to "the allowance, amount, validity, priority, extent, and secured status" of Citizens' claims, including post-petition interest, fees, costs, and default interest. Citizens has filed its proofs of claim. The Plan cannot simultaneously rely on Citizens' claims for its distribution waterfall while reserving blanket rights to challenge every component of those claims without any specificity. Any plan confirmation order should make clear that Citizens is entitled to post-petition interest at the contract default rate under § 506(b) to the extent of the equity in its collateral, and that attorneys' fees and costs are part of Citizens' allowed secured claim under the loan documents.

15.     Paragraph 31 of the Plan states that the Debtor shall receive a discharge under either § 1141(d) or § 1192 depending on the confirmation path. Citizens joins the United States Trustee's objection on this point. Pursuant to 11 U.S.C. § 1141(d)(3)(A), a debtor is not entitled to a discharge under a liquidating plan. The Plan is, by its own terms, a liquidation plan. The discharge provisions of Paragraph 31 are legally improper and must be removed from any confirmation order.

16.     If the Court is inclined to confirm a liquidation plan over Citizens' objection, Citizens requests that any confirmation order require the following modifications:

(a)     Monthly adequate protection cash payments to Citizens of not less than $12,500 per month, commencing on the Effective Date and continuing until Citizens is paid in full from sale proceeds;

(b)     Shorter sale deadlines: all properties listed within 14 days of the Effective Date, broker sale period of 90 days, auction period of 60 days thereafter, with no more than 90 days for Rehabilitation

Properties absent specific Court finding of Dr. Rose's demonstrated financial capacity to fund rehabilitation;

(c)     Strict credit bid rights: any confirmation order must expressly preserve Citizens' right to credit bid all properties at auction pursuant to § 363(k) without condition, limitation, or Court review absent a specific showing of bad faith;

(d)     Post-petition interest: any confirmation order must expressly provide that Citizens is entitled to post-petition interest at the contract default rate under its loan documents to the extent of the equity in its collateral under § 506(b);

(e)     Immediate stay relief trigger: any failure to close a sale or auction by the applicable deadline — without the additional notice-and-cure procedure of Plan Paragraph 23 — should immediately entitle Citizens to stay relief;

(f)     Elimination of improper discharge language: Paragraph 31 must be stricken and replaced with language confirming that no discharge shall be entered pursuant to § 1141(d)(3)(A);

(g)     Subchapter V Trustee: consistent with the UST's objection, any confirmation order must address Citizens' support for the Subchapter V Trustee remaining in place for the life of a non-consensual plan, with clear authority to oversee distributions and sales; and

(h)     Monthly reporting: the Debtor's monthly reporting obligations to Citizens established under the Interim Cash Collateral Order (Dkt. 55) shall continue in full force and effect throughout the plan period, with copies provided simultaneously to Citizens' counsel.

17.     If the Court determines that the Plan cannot be modified to satisfy the requirements of § 1191(b) and (c), Citizens requests that the Court deny confirmation and convert this case to Chapter 7 pursuant to 11 U.S.C. § 1112(b). As set forth in Citizens' Motion for Relief from the Automatic Stay (Dkt. 111), the Debtor cannot reorganize, the Debtor's principal has admitted that liquidation is inevitable, and an independent Chapter 7 trustee would be better positioned to conduct an orderly sale of all twenty-one properties, investigate the approximately $100,000 in unaccounted-for cash collateral, and make distributions to creditors in accordance with priority.

WHEREFORE, PREMISES CONSIDERED, The Citizens National Bank of Meridian respectfully requests that this Court: (a) sustain Citizens' Objection and deny confirmation of the Debtor's Plan in its current form; (b) in the alternative, require modification of the Plan consistent with the requirements set forth herein as a condition of confirmation; and (c) grant such other and further relief as this Court deems just and proper under the circumstances.

DATED: April 8, 2026

**THE CITIZENS NATIONAL
BANK OF MERIDIAN**

By: /s/ Jeff Rawlings
Its Attorney

**CERTIFICATE OF SERVICE**

I served a copy of the foregoing on April 8, 2026 via the ECF notification service upon Thomas Carl Rollins, Jr., Craig M. Geno and the Office of the U.S. Trustee.

/s/ Jeff Rawlings
Jeff Rawlings

Jeff Rawlings
Rawlings & MacInnis, P.A.
P.O. Box 1789
Madison, MS 39130-1789
601-898-1180
jeff@rawlingsmacinnis.net
MSB # 4642

6